UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,              :        <u>INDICTMENT</u>

        -v.-                       :        10 Cr. ___ (___)

ERNEST VOGLIANO,

           Defendant.            :

- - - - - - - - - - - - - - - - - - -x



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-13-10

<u>COUNT ONE</u>
(Conspiracy)

The Grand Jury charges:

<u>Introduction</u>

1.  At all times relevant to this Indictment, the
Internal Revenue Service ("IRS") was an agency of the United
States Department of Treasury responsible for administering and
enforcing the tax laws of the United States and collecting the
taxes owed to the Treasury of the United States.

2.  At all times relevant to this Indictment, UBS AG
("UBS") was a corporation organized under the laws of
Switzerland.  UBS, directly and through its subsidiaries,
operated a global financial services business.  Among other
things, UBS provided banking, wealth management, and asset
management services all over the world, including to United
States taxpayers living in the Southern District of New York.

3.  Beginning at least in or about 2000, UBS, through
various of its employees, engaged in a scheme to assist United
States taxpayers who had accounts at UBS in Switzerland in

concealing the existence of the accounts, and the income earned in the accounts, from the IRS.

4. Among the means by which UBS assisted certain United States taxpayers who had accounts at UBS in concealing the existence of the UBS accounts, and the income earned in UBS accounts, from the IRS, were the following:

a. Using sham corporations and foundations formed under the laws of offshore jurisdictions to conceal, from the IRS, the ownership by United States taxpayers of certain UBS accounts;

b. Accepting and including in UBS's account records IRS Forms W8-BEN (Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding) and UBS's equivalent forms that falsely stated that sham offshore corporations and foundations were the beneficial owners of certain UBS accounts when, in fact, as UBS and the United States taxpayers well knew, United States taxpayers were the beneficial owners of those UBS accounts.

**The Defendant**

5. At all times relevant to this Indictment, ERNEST VOGLIANO, the defendant, was a United States citizen living in New York, New York.

## VOGLIANO's Co-Conspirators

6.     In addition to conspiring with UBS, ERNEST VOGLIANO, the defendant, conspired with the following individual:

a.     Swiss Financial Advisor A, an independent Swiss financial advisor who is a co-conspirator not named as a defendant herein, was the sole owner of a boutique trust company based in Zurich, Switzerland.  He became a Certified Public Accountant after graduating from the University of Applied Science, School of Economics.  He is also a member of the Swiss Institut of Certified Accountants and Tax Consultants.  Beginning in or about 1998, he served as a nominee director of sham corporations formed to conceal VOGLIANO's beneficial ownership of UBS accounts, as described in more detail below.

## VOGLIANO's UBS Accounts

7.     ERNEST VOGLIANO, the defendant, maintained at least the following accounts at UBS (collectively, the "VOGLIANO UBS Accounts"):

### VOGLIANO's Stunt Facilities Account

a.     On or about March 2, 1998, Swiss Financial Advisor A and VOGLIANO opened and caused to be opened a UBS account held in the name of Stunt Facilities International Establishment ("Stunt Facilities Account"), a nominee corporation formed under the laws of Liechtenstein in or about 1984.  At the time the account was opened, Swiss Financial Advisor A instructed

UBS to send all mail concerning the Stunt Facilities Account to Swiss Financial Advisor A's business address in Zurich, rather than to VOGLIANO in New York, New York.

b. At all times relevant to this Indictment, VOGLIANO was the sole beneficial owner of the Stunt Facilities Account. Indeed, on or about March 2, 1998, Swiss Financial Advisor A, in his capacity as a member of the board of directors of Stunt Facilities International Establishment, signed a UBS document certifying that VOGLIANO was the sole beneficial owner of the Stunt Facilities Account. This UBS document listed VOGLIANO's home address in New York, New York.

c. On or about December 8, 2000, Swiss Financial Advisor A signed a UBS document directing UBS to sell all U.S. securities held in the Stunt Facilities Account by December 31, 2000. Swiss Financial Advisor A further instructed UBS with respect to the Stunt Facilities Account as follows: "[W]e instruct UBS AG not to invest in US securities until this instruction is revoked, so that reportable amounts for US tax purposes are not created."

d. On or about May 22, 2002, in Zurich, VOGLIANO and his wife signed a UBS document giving them full access to a safe deposit box held at UBS in Zurich in the name of Stunt Facilities International Establishment. Swiss Financial Advisor A signed this document on behalf of Stunt Facilities

4

International Establishment.

<u>VOGLIANO's Real Cool Account</u>

e.    On or about June 13, 2002, Swiss Financial Advisor A and VOGLIANO opened and caused to be opened a UBS account held in the name of Real Cool Investments Limited, a sham Hong Kong corporation (the "Real Cool Account").  At the time the account was opened, Swiss Financial Advisor A, in his capacity as a member of the board of directors of Real Cool Investments Limited, instructed UBS to send all mail relating to the account to Swiss Financial Advisor A's business address in Zurich.

f.    At all times relevant to this Indictment, VOGLIANO was the sole beneficial owner of the Real Cool Account. Indeed, on or about June 13, 2002, Swiss Financial Advisor A certified to UBS that VOGLIANO, of New York, New York, was the sole beneficial owner of the account.

g.    On or about June 13, 2002, March 18, 2005, and February 21, 2008, Swiss Financial Advisor A signed UBS's "Substitute Form W-8BEN" falsely certifying, under penalties of perjury, that Real Cool Investments Limited was the "beneficial owner" of the Real Cool Account "according to U.S. tax law."

h.    On or about June 18, 2002, Swiss Financial Advisor A and VOGLIANO caused UBS to be instructed to transfer the assets of the Stunt Facilities Account to the Real Cool Account.

i.   On or about June 2, 2006 and October 24, 2006, VOGLIANO traveled to UBS's offices in Zurich and received the mail that UBS had held for him relating to the Real Cool Account, and authorized UBS to destroy any mail that he did not take with him.

j.   Between in or about 2000 and in or about 2007, the year-end account balances in the VOGLIANO's Stunt Facilities and Real Cool Accounts were approximately as follows:

| Year | Stunt Facilities Account Year-end Balance | Real Cool Account Year-end Balance |
|------|-------------------------------------------|------------------------------------|
| 2000 | $4,896,893 | N/A |
| 2001 | $3,928,484 | N/A |
| 2002 | N/A | $2,659,655 |
| 2003 | N/A | $2,469,651 |
| 2004 | N/A | $1,880,762 |
| 2005 | N/A | $1,458,200 |
| 2006 | N/A | $1,267,493 |
| 2007 | N/A | $1,328,971 |

### VOGLIANO's Use of Travelers Checks and Checks to Repatriate Assets Hidden in the VOGLIANO UBS Accounts

8.   On various occasions from at least in or about February 2001 to at least in or about October 2006, ERNEST VOGLIANO, the defendant, traveled from New York, New York to UBS's offices in Zurich, Switzerland and withdrew large sums of money in the form of travelers' checks from the VOGLIANO UBS Accounts, and, as described below, returned to the United States.

On at least one occasion, VOGLIANO mailed some of the travelers checks to himself in the United States in separate envelopes. In addition, on various occasions from at least in or about February 2001 to at least in or about October 2006, VOGLIANO caused UBS to send to him at his home address in New York, New York large sums of money in the form checks drawn on his account at UBS that were issued in odd amounts. For example:

### Checks Sent to VOGLIANO in February and March 2001

a. On various dates between on or about February 21, 2001 and March 8, 2001, approximately ten checks, five each in the amount of $8,000 (February 21, 2001; February 22, 2001; February 23, 2001, February 26, 2001; and February 27, 2001), and the remaining five in the following amounts: $8,450 (March 5, 2001), $8,390 (March 5, 2001), $8,775 (March 6, 2001), $8,911 (March 7, 2001), $8,777 (March 8, 2001), were drawn on VOGLIANO's Stunt Facilities Account and sent to VOGLIANO's home address in New York, New York.

b. On or about March 19, 2001, VOGLIANO advised his UBS client advisor by handwritten letter that he had received nine checks in amounts ranging between $8,000 and $8,911 and inquiring if a tenth check remained to be sent. One or more UBS bankers noted in handwriting on the letter that a check for $8,777 was "missing," ordered it "block[ed]!" and directed a new check to be sent to VOGLIANO.

7

## Checks Sent to VOGLIANO in June 2001

c.   On or about June 7, 2001, VOGLIANO directed his UBS client advisor by handwritten letter to send VOGLIANO ten checks "each in the amount of approximately $3,000" mailed to VOGLIANO at his home address in New York, New York.

d.   On or about June 12, 2001, approximately ten checks, in the following amounts: $3,020, $3,018.50, $3,025, $3,086, $3,011, $3,029, $2,999, $3,020.80, $3,005, and $3,018, were drawn on VOGLIANO's Stunt Facilities Account and sent to VOGLIANO's home address in New York, New York.

e.   On or about June 28, 2001, VOGLIANO advised his UBS client advisor by handwritten letter that VOGLIANO had "received ten (10) checks, each in approximate amounts of $3000.00 -- A total of $30,323.30."

## Withdrawal by Travelers' Checks in October 2002

f.   On or about October 9, 2002, VOGLIANO advised his UBS client advisor by handwritten letter that he wished to meet with the UBS client advisor in Zurich, Switzerland on October 25, 2002 and pick up $50,000 in American Express travelers' checks, in $500 denominations.

g.   On or about October 24, 2002, approximately $50,500 (including a $500 commission) was withdrawn from VOGLIANO's Real Cool Account for American Express travelers' checks.

h.   On or about October 25, 2002, VOGLIANO picked up the travelers' checks described immediately above from UBS's offices in Zurich, Switzerland.

i.   On or about November 6, 2002, VOGLIANO traveled from Paris, France to New York, New York.

### Withdrawal by Travelers' Checks in May 2003

j.   On or about May 19, 2003, VOGLIANO advised his UBS client advisor that he wished to meet with the UBS client advisor on June 11, 2003 at UBS's offices in Zurich, Switzerland and instructed his advisor to prepare "$100,000 in American Express Travelers Checks in $500 denominations" to give to VOGLIANO at this meeting.

k.   On or about June 11, 2003, VOGLIANO traveled from New York, New York to Zurich, Switzerland.

l.   On or about June 11, 2003, approximately $121,200 was withdrawn from VOGLIANO's Real Cool Account for travelers' checks.

m.   On or about June 11, 2003, VOGLIANO picked up approximately $120,000 in travelers' checks from UBS's offices in Zurich, Switzerland.

n.   On or about June 29, 2003, VOGLIANO traveled from Zurich, Switzerland to New York, New York.

<u>Withdrawal By Travelers' Checks in October 2003</u>

o.   On or about October 23, 2003, approximately $80,800 was withdrawn from VOGLIANO's Real Cool Account for travelers' checks.

p.   On or about October 24, 2003, VOGLIANO traveled from New York, New York to Zurich, Switzerland.

q.   On or about October 24, 2003, VOGLIANO picked up approximately $80,000 in travelers' checks from UBS's offices in Zurich, Switzerland.

r.   On or about November 2, 2003, VOGLIANO traveled from Zurich, Switzerland to New York, New York.

<u>Withdrawal By Travelers' Checks in May 2004</u>

s.   On or about May 20, 2004, VOGLIANO traveled from New York, New York to Zurich, Switzerland.

t.   On or about May 21, 2004, approximately $101,000 was withdrawn from VOGLIANO's Real Cool Account for travelers' checks.

u.   On or about June 6, 2004, VOGLIANO traveled from Zurich, Switzerland to New York, New York.

<u>Withdrawal By Travelers' Checks in November 2004</u>

v.   On or about November 4, 2004, VOGLIANO traveled from New York, New York to Zurich, Switzerland.

w.   On or about November 5, 2004, approximately
$101,000 was withdrawn from VOGLIANO's Real Cool Account for
travelers' checks.

x.   On or about November 14, 2004, VOGLIANO
traveled from Paris, France to New York, New York.

### Withdrawal By Travelers' Checks in June 2005

y.   On or about June 10, 2005, VOGLIANO traveled
from New York, New York to Zurich, Switzerland.

z.   On or about June 10, 2005, approximately
$111,100 was withdrawn from VOGLIANO's Real Cool Account for
travelers' checks.

aa.   On or about June 10, 2005, VOGLIANO picked up
approximately $100,000 in travelers' checks from UBS's offices in
Zurich, Switzerland.

bb.   On or about June 26, 2005, VOGLIANO traveled
from Rome, Italy to New York, New York.

cc.   On or about July 18, 2005, VOGLIANO faxed a
handwritten letter to Swiss Financial Advisor A stating, "Also,
in June I received several $1,000 American Express Traveler's
checks which I did not sign and which I mailed home in several
different envelopes.  One of these envelopes did not arrive.
This missing envelope contained 3 traveler [sic] checks (each
T.C. in amount of $1,000.00) . . . .  Is it advisable for your

office to request a refund of these checks claiming they were
lost?"

### Withdrawal By Travelers' Checks in October 2005

dd.  On or about October 28, 2005, VOGLIANO
traveled from New York, New York to Zurich, Switzerland.

ee.  On or about October 28, 2005, approximately
$101,000 was withdrawn from VOGLIANO's Real Cool Account for
travelers' checks.

ff.  On or about October 28, 2005, VOGLIANO picked
up approximately $100,000 in American Express travelers' checks
from UBS's offices in Zurich, Switzerland.

gg.  On or about November 6, 2005, VOGLIANO
traveled from Paris, France to New York, New York.

### Withdrawal By Travelers' Checks in May 2006

hh.  On or about May 21, 2006, VOGLIANO traveled
from New York, New York, to Istanbul, Turkey.

ii.  On or about May 29, 2006, approximately
$111,100 was withdrawn from VOGLIANO's Real Cool Account for
travelers' checks.

jj.  On or about May 29, 2006, VOGLIANO picked up
approximately $100,000 in travelers' checks from UBS's offices in
Zurich, Switzerland.

kk.  On or about June 7, 2006, VOGLIANO traveled
from Paris, France to New York, New York.

## Withdrawal By Travelers' Checks in October 2006

ll.    On or about October 23, 2006, VOGLIANO traveled from New York, New York to Zurich, Switzerland.

mm.    On or about October 24, 2006, approximately $101,100 was withdrawn from VOGLIANO's Real Cool Account for travelers' checks.

nn.    On or about October 24, 2006, VOGLIANO picked up approximately $100,000 in American Express travelers' checks from UBS's offices in Zurich, Switzerland.

oo.    On or about November 5, 2006, VOGLIANO traveled from Paris, France to New York, New York.

## **VOGLIANO's Use of UBS Accounts to Pay Personal Expenses**

9.    From in or about 2001 to in or about 2008, ERNEST VOGLIANO, the defendant, used the Stunt Facilities and Real Cool Accounts to pay numerous personal expenses for himself and his wife, including the following:

## Use of VOGLIANO UBS Accounts to Pay Contractor

a.    On or about May 15, 2001, VOGLIANO notified his UBS client advisor by handwritten letter that he wished to pay a contractor, who was renovating VOGLIANO's house, by transfer of $50,000 from the Stunt Facilities Account to his contractor's account in Greece.  VOGLIANO explained that the contractor "prefers to accept payment to his account in Greece rather than by check in New York."  On or about the following

13

dates, VOGLIANO again instructed his UBS client advisor to transfer the following approximate amounts from the VOGLIANO UBS Accounts to his contractor's account in Greece: June 28, 2001 ($50,000), and January 21, 2003 ($30,000).

### Use of VOGLIANO UBS Accounts to Buy Fine Art

b.     On or about October 20, 2003, VOGLIANO instructed his UBS client advisor, by handwritten fax, to mail a check for €54,000 drawn on the Real Cool Account to an art gallery in Paris ("Paris Art Gallery A") to pay for a bronze sculpture that was purchased "by Ernest Vogliano for delivery to his New York home."

c.     On or about November 12, 2004, VOGLIANO caused UBS to mail a check for €160,000 drawn on the Real Cool Account to a second art gallery in Paris ("Paris Art Gallery B").

d.     On or about November 18, 2002, VOGLIANO caused to be transferred $200,000 from the Real Cool Account to another art-related entity.

### Use of Credit Cards Linked To VOGLIANO UBS Accounts

e.     On or about March 2, 1998, VOGLIANO signed a UBS document authorizing him to obtain a credit card linked to the Stunt Facilities Account.

f.     On or about May 19, 2003, VOGLIANO advised his UBS client advisor by handwritten letter that VOGLIANO wished to meet with the advisor on June 11, 2003 at UBS's offices in

14

Zurich, and that, in advance of the meeting, the advisor should arrange "new VISA credit cards for [VOGLIANO's wife] and myself as the present cards ... have expired as of 03/03."

g. From in or about March 2, 1998 to on or about June 3, 2008, when VOGLIANO cancelled credit cards linked to the Real Cool Account, VOGLIANO and his wife charged hundreds of thousands of dollars to credit cards linked to the VOGLIANO UBS Accounts, and VOGLIANO caused those bills to be paid from the VOGLIANO UBS Accounts. For example, the Real Cool Account was debited to pay VOGLIANO's credit card expenditures on or about the following dates and in the following approximate amounts: June 22, 2003 ($51,728.30), November 24, 2003 ($85,155.20), February 19, 2004 ($27,366.60), June 4, 2004 ($125,000), June 4, 2004 ($140,000), July 28, 2005 ($81,759.25), November 3, 2005 ($50,000), November 28, 2005 ($33,397.80), June 28, 2006 ($90,757.25), July 28, 2006 ($12,669.85), and November 28, 2006 ($65,452.55).

**Vogliano Moved $1.0 Million from UBS to a Liechtenstein Bank
Following Major News Reports Concerning the Government's Criminal
Investigation Into UBS's U.S. Cross-Border Banking Business**

10. On or about May 6, 2008, UBS publicly disclosed that United States and Swiss law enforcement authorities were investigating its U.S. cross-border banking business.

11. On or about May 14, 2008, a federal grand jury sitting in the Southern District of Florida returned an

15

indictment against Mario Staggl, an independent Swiss financial advisor, and Bradley Birkenfeld, a United States citizen who had worked as a director of UBS's U.S. cross-border banking business. The indictment charged Staggl and Birkenfeld with conspiracy to defraud the United States by helping U.S. taxpayers evade taxes by using sham entities to conceal their beneficial ownership of Swiss-based UBS accounts from the IRS.

12. On or about May 15, May 23, and May 30, 2008, a major news organization based in New York, New York again reported that the United States Government was actively conducting a criminal investigation of UBS's U.S. cross-border banking business. One such article, published on or about May 30, 2008, reported that Bradley Birkenfeld was expected to enter a guilty plea and cooperate with investigators, and that UBS was cooperating with the criminal inquiry. The article also stated, "Mr. Birkenfeld's case underscores how federal authorities are stepping up scrutiny of offshore transactions that allow wealthy investors to avoid taxes. The inquiry focuses on American clients of UBS's private bank, based in Zurich[.]".

13. On or about June 10, 2008, and June 16, 2008, ERNEST VOGLIANO, the defendant, moved approximately $1.0 million from the Real Cool Account at UBS to a new account, of which VOGLIANO was the beneficial owner, held in the name of Real Cool Investments Limited at a bank based in Liechtenstein

16

("Liechtenstein Bank A"). Unlike UBS, Liechtenstein Bank A does not have offices in the United States.

### VOGLIANO's False Tax Returns

14. Citizens and Lawful Permanent Residents of the United States who have income in excess of a threshold amount in any one calendar year are obligated to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year with the IRS. On such returns, United States taxpayers are obligated to report their worldwide income.

15. For at least calendar years 2002 to 2007, ERNEST VOGLIANO, the defendant, filed Forms 1040 with the IRS after signing them under penalties of perjury. On each of these returns, VOGLIANO reported his adjusted gross income and total tax due, among other things. For each of these years, VOGLIANO willfully failed to report income earned from the VOGLIANO UBS Accounts.

16. In addition, on Schedule B of Form 1040, a U.S. taxpayer must indicate whether, at any time during the relevant calendar year, the taxpayer had "an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account." If the taxpayer answers that question in the affirmative, then he or she must indicate the name of the country in which the account is located.

17.   For calendar years 2002 through 2007, ERNEST
VOGLIANO, the defendant, under penalties of perjury, falsely
certified on Schedule B of Form 1040 he did not have an interest
in, or a signature or other authority over, a financial account
in a foreign country, when, in truth and in fact, as VOGLIANO
well knew, he was the sole beneficial owner of the VOGLIANO UBS
Accounts during those years.

## VOGLIANO's Failure To File FBARs

18.   Separate and apart from the obligation to file
Forms 1040, United States taxpayers who have a financial interest
in, or signature or other authority over, a financial account in
a foreign country with an aggregate value of more than $10,000 at
any time during a particular year are required to file with the
IRS a Report of Foreign Bank and Financial Accounts, Form TD F
90-22.1 ("FBAR").   Indeed, on Schedule B of Form 1040, U.S.
taxpayers who have an interest in, or signature or other
authority over, financial accounts in foreign countries are
specifically directed to refer to IRS instructions relating to
the FBAR.   The FBAR for any particular year is required to be
filed on or before June 30 of the following year.   The FBAR
requires that the filer identify the financial institution with
which the financial account is held, the type of account (either
bank, securities, or other), the account number, and the maximum

value of the account during the calendar year for which the FBAR is being filed.

19. By virtue of his beneficial ownership and signature authority over the Stunt Facilities and Real Cool Accounts, ERNEST VOGLIANO, the defendant, was required to file FBARs for at least calendar years 1998 through 2007. For at least calendar years 1998 through 2007, VOGLIANO failed to file FBARS by the deadline of June 30 of the following year, as required.

### Statutory Allegations

20. From at least in or about 1998 through in or about 2008, in the Southern District of New York and elsewhere, ERNEST VOGLIANO, the defendant, UBS, and Swiss Financial Advisor A, co-conspirators not named as defendants herein, and others known and unknown, unlawfully, willfully, and knowingly, did combine, conspire, confederate and agree together and with each other to defraud the United States and an agency thereof, to wit, the Internal Revenue Service of the United States Department of the Treasury, and to commit offenses against the United States, to wit, violations of Title 26, United States Code, Section 7206(1).

### Objects of the Conspiracy

21. It was a part and an object of the conspiracy that ERNEST VOGLIANO, the defendant, and others known and unknown, unlawfully, willfully, and knowingly would and did defraud the

United States of America and the IRS by impeding, impairing, defeating, and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment, and collection of income taxes.

22.   It was further a part and an object of the conspiracy that ERNEST VOGLIANO, the defendant, and others known and unknown, unlawfully, willfully, and knowingly would and did make and subscribe and cause others to make and subscribe United States individual income tax returns, which returns contained and were verified by written declaration that they were made under the penalties of perjury, and that the defendants and their co-conspirators did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

## Means and Methods of the Conspiracy

23.   Among the means and methods by which ERNEST VOGLIANO, the defendant, and his co-conspirators, would and did carry out the conspiracy were the following:

a.   VOGLIANO and his co-conspirators established UBS accounts in the name of sham entities for the purpose of hiding VOGLIANO's beneficial ownership of the accounts from the IRS.

b.   Swiss Financial Advisor A signed UBS's substitute forms for IRS Forms W8-BEN that falsely declared,

under penalties of perjury, that these sham entities were the beneficial owners of VOGLIANO's accounts, when, as VOGLIANO, UBS, and Swiss Financial Advisor A well knew, VOGLIANO was the sole beneficial owner of these accounts.

c.     To avoid detection by United States law enforcement authorities, VOGLIANO, UBS, and Swiss Financial Advisor A agreed that all correspondence relating to the VOGLIANO UBS Accounts  would not be mailed to him in New York, New York, but would be mailed to Swiss Financial Advisor A in Zurich.

d.     To avoid detection by United States law enforcement authorities, VOGLIANO withdrew funds from the VOGLIANO UBS Accounts through the purchase of traveler's checks and the use of credit cards linked to the VOGLIANO UBS Accounts.

e.     VOGLIANO deliberately misled his tax preparer ("Tax Preparer A") with respect to at least calendar years 2002 through 2007 by failing to disclose to Tax Preparer A the existence of, and the income that VOGLIANO earned from, the VOGLIANO UBS Accounts during those years.

### Overt Acts

24.     In furtherance of the conspiracy and to effect its illegal objects, ERNEST VOGLIANO, the defendant, and his co-conspirators, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.　　On or about April 7, 2003, VOGLIANO signed, under penalties of perjury, and filed and caused to be filed with the IRS, an Individual Income Tax Return, Form 1040, for himself and his spouse for calendar year 2002, on which he failed to report income that he had earned in the VOGLIANO UBS Accounts that year, and which falsely reported that VOGLIANO did not have an interest in, or signature or other authority over, a foreign bank account in 2002.

b.　　On or about April 6, 2004, VOGLIANO signed, under penalties of perjury, and filed and caused to be filed with the IRS, an Individual Income Tax Return, Form 1040, for himself and his spouse for calendar year 2003, on which he failed to report income that he had earned in the VOGLIANO UBS Accounts that year, and which falsely reported that VOGLIANO did not have an interest in, or signature or other authority over, a foreign bank account in 2003.

c.　　In or about April 11, 2005, VOGLIANO signed, under penalties of perjury, filed and caused to be filed with the IRS, an Individual Income Tax Return, Form 1040, for himself and his spouse for calendar year 2004, on which he failed to report income that he had earned in the VOGLIANO UBS Accounts that year, and which falsely reported that VOGLIANO did not have an interest in, or signature or other authority over, a foreign bank account in 2004.

d.    On or about April 5, 2006, VOGLIANO signed, under penalties of perjury, and filed and caused to be filed with the IRS, an Individual Income Tax Return, Form 1040, for himself and his spouse for calendar year 2005, on which he failed to report income that he had earned in the VOGLIANO UBS Accounts that year, and which falsely reported that VOGLIANO did not have an interest in, or signature or other authority over, a foreign bank account in 2005.

e.    On or about April 9, 2007, VOGLIANO signed, under penalties of perjury, and filed and caused to be filed with the IRS, an Individual Income Tax Return, Form 1040, for himself and his spouse for calendar year 2006, on which he failed to report income that he had earned in the VOGLIANO UBS Accounts that year, and which falsely reported that VOGLIANO did not have an interest in, or signature or other authority over, a foreign bank account in 2006.

f.    On or about April 13, 2008, VOGLIANO signed, under penalties of perjury, and filed and caused to be filed with the IRS, an Individual Income Tax Return, Form 1040, for himself and his spouse for calendar year 2007, on which he failed to report income that he had earned in the VOGLIANO UBS Accounts that year, and which falsely reported that VOGLIANO did not have an interest in, or signature or other authority over, a foreign bank account in 2007.

g.   In or about June 2008, VOGLIANO caused to be moved approximately $1 million from the Real Cool Account at UBS to an account held in the name of Real Cool Investments Limited at Liechtenstein Bank A.

(Title 18, United States Code, Section 371.)

### COUNTS TWO THROUGH SIX
**(Subscribing to False Individual Tax Returns)**

The Grand Jury further charges:

25.   The factual allegations of paragraphs 1 through 19 and paragraphs 23 through 24 are restated as if fully alleged herein.

26.   On or about the filing dates set forth below, in the Southern District of New York and elsewhere, ERNEST VOGLIANO, the defendant, unlawfully, willfully, and knowingly did make and subscribe U.S. Individual Income Tax Returns, Forms 1040, for the calendar years set forth below and filed on or about the dates indicated below, which returns contained and were verified by the written declaration of VOGLIANO that they were made under penalties of perjury, and which returns VOGLIANO did not believe to be true and correct as to every material matter, in that VOGLIANO: (a) failed to report income received by him in one or more bank, securities, and other financial accounts at UBS; and (b) failed, on Schedule B, Part II, line 7a, to report that he had an interest in, or a signature or other authority over, bank, securities, and other financial accounts in Switzerland, whereas

24

VOGLIANO then and there well knew and believed that he had
received income in one or more accounts at UBS and had an
interest in, or a signature or other authority over, bank,
securities, and other financial accounts in Switzerland:

| Count | Calendar year | Approximate Date of Filing |
|-------|---------------|----------------------------|
| Two   | 2003          | April 6, 2004              |
| Three | 2004          | April 11, 2005             |
| Four  | 2005          | April 5, 2006              |
| Five  | 2006          | April 9, 2007              |
| Six   | 2007          | April 13, 2008             |

(Title 26, United States Code, Section 7206(1);
Title 18, United States Code, Section 2.)

## COUNTS SEVEN THROUGH TEN
### (Willful Failure to File FBARs)

The Grand Jury further charges:

27.   The factual allegations of paragraphs 1 through 20
and paragraphs 24 through 25 as if fully alleged herein.

28.   On or before the due dates listed below, in the
Southern District of New York and elsewhere, ERNEST VOGLIANO, the
defendant, did unlawfully, willfully, and knowingly fail to file
with the Commissioner of the IRS an FBAR disclosing that he had a
financial interest in, and signature and other authority over, a
bank, securities, and other financial account in a foreign
country, to wit, at least one financial account at UBS in

Switzerland, which had an aggregate value of more than $10,000

during the years listed below:

| Count | Calendar year | Due Date to File FBAR |
|-------|---------------|-----------------------|
| Seven | 2004 | June 30, 2005 |
| Eight | 2005 | June 30, 2006 |
| Nine | 2006 | June 30, 2007 |
| Ten | 2007 | June 30, 2008 |

(Title 31, United States Code, Sections 5314 & 5322; Title 31
Code of Federal Regulations, Sections 103.24, 103.27(c, d) &
103.59(b); and Title 18, United States Code, Section 2.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

## UNITED STATES OF AMERICA

### -v.-

### ERNEST VOGLIANO,

#### Defendant.

## INDICTMENT

10 Cr. _____ (_____)

(18 U.S.C. § 371; 26 U.S.C. § 7206(1);
31 U.S.C. §§ 5314 and 5322;
31 C.F.R. §§ 103.24, 103.27(c, d), and
103.59(b); 18 U.S.C. § 2.)

_____
PREET BHARARA
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

4-13-10
MB

Filed Indictment under seal.... Ellis, USMJ.